UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOUIS VUITTON MALLETIER S.A.S.,

     Plaintiff,

v.

C.G.C. ENTERPRISES, INC.; CHARLES
CHESLOCK; ABC CORPS. 1-10; and JOHN
DOES 1-100,

     Defendants.

CIVIL ACTION NO:

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW Plaintiff Louis Vuitton Malletier S.A.S. ("Louis Vuitton"), by and through its undersigned counsel, and hereby sues Defendants C.G.C. Enterprises, Inc. and Charles Cheslock, Sr. ("Cheslock") (collectively, the "Defendants") and alleges:

## STATEMENT OF THE CASE

1.  This is an action for, *inter alia*, contributory trademark infringement of Louis Vuitton's federally registered trademarks (the "Louis Vuitton Trademarks") under federal law and breach of contract arising from Defendants' breach of a June 2018 settlement agreement between Louis Vuitton and the Defendants (the "June 2018 Settlement Agreement") that was intended to address and resolve the prolific trademark counterfeiting taking place at Defendants' business, the Boulevard Flea Market, Inc. (the "Market"), located at 500 Ella T. Grasso Blvd., New Haven, Connecticut 06519.

2.  Indeed, it is with some regret that Louis Vuitton brings this action as it had believed that Defendants were taking the obligations set forth in the June 2018 Settlement Agreement seriously. Among other things, the June 2018 Settlement Agreement required

Defendants to ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

3.    Despite ████████████████████████████████████████████

████████████████████████████████████████████████████████████

Louis Vuitton, as a result of an investigation that began in October 2022, discovered that Defendants' efforts to satisfy the four obligations set forth above were woefully inadequate.

4.    Indeed, as set forth below, it is now clear that Defendants have ████████████████████ ████████████████████████████████ required under the June 2018 Settlement Agreement and that the Market has continued to serve as a platform for the rampant and open sale of Counterfeit Louis Vuitton Products.

5.    By and through their actions, Defendants have created a safe haven for this unlawful activity.  Defendants have provided space to Vendors that Defendants knew or had reason to know were selling and/or offering for sale Counterfeit Louis Vuitton Products.  Despite

being aware that Counterfeit Louis Vuitton Products were being offered for sale and sold by such Vendors, Defendants turned a blind eye to this unlawful activity and continue to allow the sale of Counterfeit Louis Vuitton Products to flourish under their auspices—all to the significant detriment of Louis Vuitton.

## PARTIES

6.      Louis Vuitton is a *société par actions simplifiées* duly organized and existing under the laws of France with a principal place of business at 2 Rue du Pont Neuf, Paris, France. Louis Vuitton, directly, or through its related companies, is engaged, *inter alia*, in the design, manufacture, distribution, and sale in interstate and foreign commerce, including within this judicial district, of prestigious luxury merchandise including, without limitation, handbags, luggage, apparel, shoes, scarves, jewelry, watches, and other fashion accessories bearing one or more of the Louis Vuitton Trademarks (the "Louis Vuitton Products").

7.      Upon information and belief, Defendant C.G.C. Enterprises, Inc. ("CGC") is a Connecticut corporation with its principal place of business located at 500 Ella T. Grasso Blvd., New Haven, Connecticut 06519 and with a mailing address of PO Box 8176, New Haven, Connecticut 06530.  *See* 2023 Annual Report filed with the Connecticut Secretary of State, attached hereto as Exhibit A.

8.      Upon information and belief, Defendant Charles Cheslock Sr. ("Cheslock") is the President and Owner of CGC and therefore has the rights and ability to control the actions of corporate defendant CGC.  Cheslock resides at 52 Cart Road, New Haven, Connecticut 06512 and maintains additional business and mailing addresses with CGC as listed above in Paragraph 8.  *See* Ex. A at p. 2.

9.      Upon information and belief, Defendants ABC Corporations 1-10 are entities

involved in the management and operation of the Market and are involved in the infringing activities herein.  Louis Vuitton does not currently know the identities of "ABC Corps" 1-10 but will use its best efforts to identify these entities through further investigation, and will amend its pleadings to name these entities accordingly if and when it obtains this knowledge.

10.     Upon information and belief, Defendants John Does 1-100 are the individual principal owners, officers, directors, and/or managers of CGC and are participants in and the moving forces behind the infringing activities described herein.  Louis Vuitton does not currently know the identities of "John Does" 1-100 but will use its best efforts to identify these entities through further investigation, and will amend its pleadings to name these entities accordingly if and when it obtains this knowledge.

<u>**JURISDICTION AND VENUE**</u>

11.     This Court has subject matter jurisdiction to the trademark infringement claims—which arise under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* for contributory infringement of trademarks registered with the United States Patent and Trademark Office ("USPTO")—pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

12.     This Court has subject matter jurisdiction over the breach of contract and other state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same facts and circumstances as the claims under federal law.

13.     This Court also has jurisdiction over this action under 28 U.S.C. § 1332, as the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000) and arises between a citizen of this state and citizens of another state.

14.     This Court has personal jurisdiction over Defendants because they: reside in, conduct business and are otherwise purposefully, systematically, and continuously engaged in

substantial and not isolated activities in, and committed the vast majority, if not all, of the conduct complained of herein occurred within this District and the State of Connecticut.

15.     Personal jurisdiction over the corporate and each of the Individual Defendants is therefore proper in this judicial district.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District and because at all relevant times, Defendants resided in and/or maintained a principal place of business within this District.

## FACTUAL ALLEGATIONS

**A.     Louis Vuitton and The Louis Vuitton Trademarks**

17.     Since its founding in 1854 in Paris as a luggage and trunks business, Louis Vuitton has grown into one of the world's premiere fashion houses, known for its high-quality handbags, luggage, scarves, jewelry, watches, and many other fashion and luxury goods.

18.     To protect and maintain the image of the brand, Louis Vuitton Products are sold exclusively through boutiques owned and operated by Louis Vuitton and its related companies, some of which are located within high-end retail stores such as Neiman Marcus and Saks Fifth Avenue, through the Louis Vuitton website at http://us.louisvuitton.com, and through the website of its related company, Le Bon Marché, at http://www.24s.com.

19.     Louis Vuitton is the owner of the famous Louis Vuitton Trademarks, including, but not limited to, the LOUIS VUITTON and LOUIS VUITTON-formative word marks, the Toile Monogram design mark, the LV Logo design mark, the Stylized Flower design marks, the Damier Design mark, and the S-Lock design mark, which are registered for use in conjunction with a variety of goods, including, *inter alia*, handbags, accessories, and apparel.

20.    Representative examples of the Louis Vuitton Trademarks, which are each registered with the USPTO, are listed in the table below, and true and correct copies of the U.S. registration certificates for these Louis Vuitton Trademarks are attached hereto as Exhibit B:

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|------|----------|-----------|------------------------|
| **The *LOUIS VUITTON* and *LOUIS VUITTON*-formative Word Marks** | | | |
| LOUIS VUITTON | 1,045,932 | 08/10/1976 | Class 18: Luggage and ladies' handbags |
| LOUIS VUITTON | 1,990,760 | 08/06/1996 | Class 18: Traveling bags; handbags; credit card cases |
| LOUIS VUITTON | 2,904,197 | 11/23/2004 | Class 14: Jewelry, namely, rings, earrings, cuff links, bracelets, charms, necklaces, horological and chronometric instruments, namely, watches, wrist-watches, straps for wrist-watches and watch cases |
| LOUIS VUITTON | 4,530,921 | 05/13/2014 | Class 9: Sunglasses; accessories for telephones, mobile phones, smart phones, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories<br><br>Class 25: Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, waterproof pants, overcoats, parkas, skirts, dresses, pajamas, dressing gowns, nightgowns, robe, gloves, neck ties, belts for clothing, leather belts, scarves, pocket squares, sashes for wear, shawls, stockings, socks, tights, braces for clothing, suspenders, stoles, underwear, lingerie, bathing suits; shoes |
| LOUIS VUITTON | 6,855,032 | 09/27/2022 | Class 10: Sanitary face coverings in the nature of protective face shields for protection against viral infection; protective masks, namely, reusable sanitary masks for protection against viral infection; protective chin shields specially adapted for placement underneath sanitary masks for protection |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | | | against viral infection; protective gloves, namely, sanitary gloves for protection against viral infection; face masks for medical use; surgical masks; protective face shields for medical use; protective chin shields for medical use; gloves for medical use |
| LOUIS VUITTON PARIS | 2,346,373 | 05/02/2000 | Class 18: Goods made of leather or of imitations of leather not included in other classes, namely, boxes of leather, trunks, valises, travelling bags, traveling sets for containing cosmetics, garment bags for travel, rucksacks, handbags, beach bags, shopping bags, shoulder bags, briefcases, pouches; fine leather goods, namely, pocket wallets, purses, key cases, card holders, checkbook holders<br><br>Class 25: Clothing and underwear, namely, sweaters, shirts, suits, waistcoats, skirts, coats, pullovers, trousers, dresses, clothing jackets, shawls, stoles, scarves, neckties, clothing belts, bathing suits, footwear |
| *The LV Logo Design* | | | |
| | 1,519,828 | 01/10/1989 | Class 18: Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, handbags, pocketbooks |
| | 1,794,905 | 09/28/1993 | Class 25: Clothing for men and women; namely belts, shawls, sashes, scarves; footwear, headgear |
| | 1,938,808 | 11/28/1995 | Class 14: Jewelry, watches and straps for wrist watches |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| LV | 2,361,695 | 06/27/2000 | Class 25: Clothing, namely, sweaters, shirts, sweatshirts, polo shirts, t-shirts, suits, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, pocket handkerchief squares for wear, gloves, ties, belts, bathing suits, shoes, boots and sandals, hats |
| LV | 2,909,002 | 12/07/2004 | Class 9: Accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories<br><br>Class 26: Brooches for clothing |
| LV | 4,614,736 | 09/30/2014 | Class 9: Accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories<br><br>Class 26: Brooches for clothing |
| LV | 6,874,886 | 10/18/2022 | Class 10: Face shields for protection against viral infection; fashion face masks being sanitary masks for protection against viral infection; face coverings incorporating protective chin shields being sanitary masks for protection against viral infection; protective gloves for medical use; Face masks for medical use; Surgical masks; protective face shields for medical use; protective chin shields for medical use; gloves for medical use |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | 5,477,535 | 05/29/2018 | Class 14: Jewelry; fashion jewelry, especially precious or semi-precious stones, pearls, rings, earrings, cuff links, bracelets, charms, brooches, necklaces, pendants, key rings of precious metal, tie pins, medallions, jewelry rolls for travel<br><br>Class 25: Footwear, slippers, boots and half-boots |
| *The Toile Monogram Design* | | | |
| | 297,594 | 09/20/1932 | Class 18: Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks |
| | 1,770,131 | 05/11/1993 | Class 25: Clothing for men and women, namely, shawls, sashes, scarves; headgear |
| | 2,399,161 | 10/31/2000 | Class 25: Clothing and underwear, namely, shirts, polo shirts, t-shirts, waistcoats, raincoats, skirts, coats, trousers, dresses, jackets, shawls, stoles, scarves, neckties, gloves, ties, belts, bathing suits, shoes, boots and sandals, hats |
| | 4,192,541 | 08/21/2012 | Class 9: Accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, hands-free kits for telephones, covers, housings, façades, hand straps, and neck straps<br><br>Class 14: Jewelry<br><br>Class 18: Traveling bags; toiletry bags sold empty; wallets; purses; leather key cases<br><br>Class 25: Clothing, namely, underwear, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | | | scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear |
| | | | Class 34: Cigar and cigarette cases of leather and imitation leather |
| | 6,874,887 | 10/18/2022 | Class 10: Face shields for protection against viral infection; fashion face masks being sanitary masks for protection against viral infection; face coverings incorporating protective chin shields being sanitary masks for protection against viral infection; protective gloves for medical use; Face masks for medical use; Surgical masks; protective face shields for medical use; protective chin shields for medical use; gloves for medical use |
| **Décor Floral Design** | | | |
| | 1,841,850 | 06/28/1994 | Class 18: Bags; namely, traveling bags; handbags; pouches; wallets; pocket wallets; key holders |
| | 3,107,072 | 06/20/2006 | Class 18: Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, business card cases, credit card cases |
| | | | Class 25: Clothing and undergarments, namely, belts, scarves shawls, jackets, sashes for wear, shoes, boots |
| **The Stylized Flower Designs** | | | |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | 2,177,828 | 08/04/1998 | Class 14: Jewelry, namely, rings, earrings, cufflinks, bracelets, charms, necklaces<br><br>Class 18: Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather, trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas<br><br>Class 25: Clothing and underwear, namely shawls, stoles, belts, shoes, boots and sandals |
| | 3,021,231 | 11/29/2005 | Class 9: Spectacles, sunglasses and spectacle cases |
| | 6,952,203 | 01/17/2023 | Class 9: Eyewear; sunglasses; spectacles; spectacle frames; covers for smartphones; cases for smartphones<br><br>Class 10: Protective face shields for medical use; protective face shields in the nature of protective face masks for medical use; protective face shields in the nature of protective masks being face masks for protection against viral infection; protective face shields being face shields for protection against viral infection |
| | 2,181,753 | 08/18/1998 | Class 14: Jewelry, namely, rings, ear rings, bracelets, charms, necklaces, horological instruments, straps for watches, watches and wrist-watches, cases for watches<br><br>Class 18: Trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | | | bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas |
| | | | Class 25: Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts shoes, boots and sandals |
| | 3,023,930 | 12/6/2005 | Class 9: Spectacles, sunglasses and spectacle cases |
| | 6,952,204 | 01/17/2023 | Class 9: Eyewear; sunglasses; spectacles; spectacle frames; covers for smartphones; cases for smartphones |
| | | | Class 10: Protective face shields for medical use; protective face shields in the nature of protective face masks for medical use; protective face shields in the nature of protective masks being face masks for protection against viral infection; protective face shields being face shields for protection against viral infection |
| | 2,773,107 | 10/14/2003 | Class 14: Jewelry including rings, earrings, cuff links, bracelets, charms, necklaces, and medallions |
| | | | Class 18: Travel bags, travel bags made of leather; rucksacks, shoulder bags, handbags; attaché-cases, briefcases, drawstring pouches, pocket wallets, purses, umbrellas, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather; key holders made of leather or of imitation |
| | | | Class 25: Clothing, namely, shirts, T-shirts, belts, scarves, neck ties, shawls, raincoats, |

12

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | | | overcoats, high-heeled shoes, low-heeled shoes, boots, tennis shoes |
| | 3,051,235 | 01/24/2006 | Class 9: Spectacles, sunglasses and spectacle cases |
| | 6,976,619 | 02/14/2023 | Class 9: Eyewear; sunglasses; spectacles; spectacle frames; covers for smartphones; cases for smartphones<br><br>Class 10: Protective face shields for medical use; protective face shields in the nature of protective face masks for medical use; protective face shields in the nature of protective masks being face masks for protection against viral infection; protective face shields being face shields for protection against viral infection |
| ***The Damier Design*** | | | |
| | 2,225,321 | 06/22/1999 | Class 25: Clothing and other garments, namely, sweaters, coats, jackets, ties, clothing belts, footwear |
| | 2,378,388 | 08/22/2000 | Class 18: Goods made of leather or imitations of leather not included in other classes, namely, boxes of leather principally used for travel purposes, trunks, valises, traveling bags, handbags, beach bags, shopping bags, shoulder bags, brief cases, pouches, fine leather goods namely, pocket wallets, purses, key cases, business card cases, credit card cases |

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|---|---|---|---|
| | 2,421,618 | 01/16/2001 | Class 18: Goods made of leather or imitations of leather not included in other classes, namely, valises, traveling bags, traveling sets for containing cosmetics, handbags, shopping bags, shoulder bags, brief cases, pouches |
| | 3,576,404 | 02/17/2009 | Class 18: Boxes of leather or imitation leather for packaging and carrying goods, trunks, suitcases, traveling sets comprised of matching luggage, traveling bags, luggage, garment bags for travel, toiletry cases sold empty, rucksacks, satchels, handbags, beach bags, leather shopping bags, sling bags, suit carriers, shoulder bags, waist bags, purses, travel cases, briefcases, briefcase-type portfolios, leather pouches, wallets, change purses, key cases, business card cases, calling card cases |
| | 6,836,091 | 09/06/2022 | Class 18: Travelling bags; handbags; pocket wallets; wallets; change purses; business card cases |
| | 6,836,090 | 09/06/2022 | Class 18: Travelling bags; handbags; pocket wallets; wallets; change purses; business card cases |
| *The S-Lock Design* | | | |
| | 1,650,162 | 07/09/1991 | Class 18: Leather and imitation leather products, namely, handbags |

14

| Mark | Reg. No. | Reg. Date | Class & Goods/Services |
|------|----------|-----------|------------------------|
| | 3,066,114 | 03/07/2006 | Class 09: Sunglasses<br>Class 18: Leather and imitation leather products, namely, handbags and purses |
| | 3,617,909 | 05/12/2009 | Class 18: Leather and imitation leather products, namely, toiletry cases sold empty; handbags |

21.     The above-referenced trademark registrations are owned by Louis Vuitton, are valid, subsisting, and in full force and effect, and are registered on the Principal Register of the USPTO.  All of the registrations listed above were issued long prior to the acts of Defendants complained of herein and—with the exception of U.S. Trademark Reg. Nos. 6,836,090, 6,836,091, 6,952,203, 6,952,204, 6,976,619, 6,874,887, 6,874,886, and 6,855,032—have become incontestable pursuant to 15 U.S.C. § 1065.

22.     Louis Vuitton has invested millions of dollars and decades of time and effort to create consumer recognition in the Louis Vuitton Trademarks and to ensure that the public, not only in the United States but throughout the world, associates the Louis Vuitton Trademarks with high-quality luxury goods emanating exclusively from Louis Vuitton.

23.     As a result of Louis Vuitton's efforts, millions of consumers have been exposed to the Louis Vuitton Trademarks through advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, in songs, on the Internet and social media, and in other forms of unsolicited media coverage.

24.     Louis Vuitton has developed a worldwide reputation for high-quality luxury

goods and the public has come to exclusively and immediately identify products bearing the Louis Vuitton Trademarks with a single source—Louis Vuitton. Accordingly, each of the Louis Vuitton Trademarks, and the goodwill associated therewith, are of inestimable value to Louis Vuitton.

**B.    Defendants' Ownership and Operation of the Market**

25.    Upon information and belief, CGC has owned and operated the Market since 1992.

26.    Upon information and belief, Cheslock is the President of CGC, is the driving force behind the business operations of CGC and the Market, and has the right and ability to control the actions of CGC and the Market.

27.    Accordingly, Defendants collectively own, operate, supervise, manage, and are otherwise responsible for all business activities at the Market.

28.    Upon information and belief, as part of their ownership and operation of the Market, Defendants and/or their agents or affiliates, select Vendors to operate within the Market, enter into lease or other contractual agreements with said Vendors, and are responsible for overseeing the operation and conduct of the Vendors. The Market can accommodate at least 150 Vendors at a time and is only open on weekends. Among other things, Defendants set and enforce policies and procedures for operating within the Market and can evict Vendors for violations of the policies and/or illegal or unlawful activities if they so choose.

**C.    History of Counterfeit Louis Vuitton Products at the Market**

29.    There is a long history of illegal conduct and sale of counterfeit goods, including Counterfeit Louis Vuitton Products, at the Market. Defendants have had knowledge, or willfully blinded themselves to these activities for just as long. Indeed, a significant portion of these

activities are not hidden—they take place in plain view across numerous Vendor spaces within the Market.

30.     The illegal counterfeiting activity at the Market is not a secret.  In fact, it is a subject of public knowledge.  For example, social media reviews of the Market frequently noted the easy and widespread availability of "knockoff" products, going at least as far back as this August 2012 review on the FourSquare platform describing the purchase of a Counterfeit Louis Vuitton Product[1]:



31.     Numerous widely used websites and platforms tout the easy and widespread availability of counterfeit and "knockoff" products at the Market.  For example:

---

[1] https://foursquare.com/item/50280389e4b0fe42325497b6



Review on Yelp.com [2]



Review on Google Maps/ Google Reviews [3]

[2] https://www.yelp.com/biz/boulevard-flea-market-new-haven?hrid=g-EMwxS94e9cjqvdMj7OOg&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)
[3] https://maps.app.goo.gl/zqompsE628AjmT2n8



Review on Google Maps/ Google Reviews[4]

32.     On or about November 2, 2013, members of the New Haven Police Department ("NHPD") conducted a raid at the Market related to the sale of counterfeit merchandise.  The raid, which was the culmination of a longstanding investigation conducted by the NHPD in collaboration with investigators and several brands including Louis Vuitton, resulted in the seizure of counterfeit products whose retail value was nearly $2,000,000.  The raid also led to the arrest of over twenty-five individuals, including Vendors selling Counterfeit Louis Vuitton Products.  The raid was widely publicized in the newspaper, on television, and online.  *See, e.g.,* NBC CT story available at https://www.nbcconnecticut.com/news/local/new-haven-police-raid-flea-market/1938855/.

33.     On or about January 8, 2014 Louis Vuitton delivered cease and desist letters to Defendants notifying them of the Counterfeit Louis Vuitton Products discovered during the November 2013 NHPD raid and identifying the Vendors arrested.  Louis Vuitton sent additional cease and desist letters in connection with the raid on or about March 13, 2014, May 30, 2014, April 19, 2017, and May 30, 2017.

34.     Despite the November 2013 NHPD raid and Louis Vuitton's cease and desist letters, sales of counterfeit products at the Market persisted.  Louis Vuitton received numerous reports and ample evidence about the sale of Counterfeit Louis Vuitton Products at the Market.

---

[4] https://g.co/kgs/RDNwfy3

Among other things, in December 2016, the NHPD conducted additional raids on the Market leading to the confiscation of additional Counterfeit Louis Vuitton Products and additional arrests. Louis Vuitton notified Defendants of this raid, including via letter dated June 19, 2017.

35. Louis Vuitton representatives also visited the Market numerous times leading up to Louis Vuitton's 2018 attempt to address the rampant counterfeiting problem at the Market. For example, Louis Vuitton's representatives visited to the Market on:

- May 20, 2017, which identified approximately 50 Vendors offering Counterfeit Louis Vuitton Products for sale and resulted in 25 undercover purchases of Counterfeit Louis Vuitton Products;

- July 8, July 22, and July 30 2017, which identified over 20 Vendors offering Counterfeit Louis Vuitton Products for sale and resulted in multiple undercover purchases of Counterfeit Louis Vuitton Products;

- August 13, 2017, which identified over 500 counterfeit items sold in plain view and resulted in multiple undercover purchases of Counterfeit Louis Vuitton Products;

- November 4, 2017 and December 16, 2017, which identified multiple additional Vendors selling Counterfeit Louis Vuitton Products; and

- March 10, 2018, which identified ongoing sales and resulted in additional undercover purchases of Counterfeit Louis Vuitton Products.

36. On several occasions between July-December 2017, Louis Vuitton served cease and desist letters upon multiple Vendors engaging in the unlawful sale of Counterfeit Louis Vuitton Products identified in the course of these investigations.

37. Louis Vuitton also notified Defendants and served additional cease and desist

letters detailing the ongoing sale of Counterfeit Louis Vuitton Products at the Market including on June 9 and June 22, 2017, July 28, 2017, August 7, 2017, September 5, 2017, January 3 and 17, 2018, and multiple letters in February and March 2018.   These letters provided specific evidence of the illegal activity and identified, by name, booth location and in many cases pictures, the specific Vendors involved.   Defendants' responses to the letters confirmed their awareness of the sale of Counterfeit Louis Vuitton Products and the widespread scope of the problem.

**D.      The 2018 Settlement Agreement**

38.      Eventually, Defendants agreed to discuss the Market's counterfeiting problem with Louis Vuitton. On or about June 2018, Louis Vuitton, CGC, Cheslock, and/or their representatives discussed and agreed to a framework to resolve all of the prior infringement, and CGC, Cheslock and the Market agreed to take certain actions moving forward.   This agreement was embodied in the June 2018 Settlement Agreement executed by CGC and Cheslock on June 8, 2018 and by Louis Vuitton on June 11, 2018.   A true and correct copy of the June 2018 Settlement Agreement is attached hereto as Exhibit C.

39.      Under the June 2018 Settlement Agreement, Defendants agreed to ██████████

████████████████████████████████████████████████████████████████████████

██████████████████████████

40.      Under Section 4 of the 2018 Settlement Agreement, Defendants agreed ██████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████      *See* Ex. C at p.3.

41.      Under Section 5 of the 2018 Settlement Agreement, Defendants also agreed to

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████ *Id.*

42.   Under Sections 6 and 7, Defendants agreed to ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████   The Agreement also required ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████

43.   Under Section 7 of the 2018 Settlement Agreement, Defendants were also

required to ██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████. *Id.* at 4-

6.

44.   Under Section 10, Louis Vuitton ████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Id*. at 7-8.

45.    Under Section 11, Louis Vuitton agreed to ██████████████

████████████████████████████████████████████████████

████████████ *Id*. at 8.

46.    The June 2018 Settlement Agreement took effect on June 11, 2018 and pursuant

to Section 27, ████████████████████. *See id.* at 13 (Section 27, which provides that ██

████████████████████████████████████████████████████

████████████████")

**E.    Defendants' Breach of the Settlement Agreement**

47.    Despite the June 2018 Settlement Agreement, sales and offerings for sale of

Counterfeit Louis Vuitton Products persist at the Market.

48.    On July 10, 2018, Louis Vuitton ████████████ pursuant to Section 11 of the

2018 Settlement Agreement, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

49.    Since July 2018, Louis Vuitton ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

23

██████████████████████████

50.     From  July  2018  to  June  2023,  Defendants  ████████████████

████████████████████████████████████

| ████████████ | ████████ | ████ |
|---|---|---|
| ████ | ████████ | ████████████████ |
| ████████ | ████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████ | ████████████ | ████████████████ |
| ████ | ██████ | █ |
| ████████ | ████████ | ████████████████ |
| ████ | ██████ | ████████████████ |
| ██████ | ████ | █ |
| ████████████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████████ | ████████████ | ████████████████ |
| ████████ | ██████ | █ |
| ████████ | ████████████ | ████████████████ |

| | | |
|---|---|---|
| ████████ | ██████ | ███ |
| ██████ | ███████ | ████████████ |
| █████ | ███████ | █ |
| █████ | ███████ | █ |
| █████ | ███████ | █ |
| █████ | ███████ | █ |
| █████ | ██████ | ██████████ |
| ██████ | ███████ | ███████████ |
| ████████ | ████████ | ███████████ |
| ██████ | ███████ | ███████████ |
| ██████ | █████ | █ |
| ███████ | ████████ | ██████████ |
| ██████ | ███████ | ██████████ |
| █████ | █████ | █ |
| █████ | █████ | █ |
| █████ | █████ | █ |
| █████ | ██████ | ██████████ |
| █████ | ██████ | ██████████ |
| █████ | ██████ | ███████████ |
| ██████ | ██████ | ███████████ |
| ██████ | █████ | █ |
| ██████ | ███████ | ████████████ |
| ██████ | █████ | █ |



51.    Notably, Defendants never ██████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████. Moreover, a significant number of the

███████████████████████████████████████████████████ despite the widely acknowledged fact that Louis Vuitton sells and holds property rights over a wide variety of products including belts, luggage, apparel, footwear, and accessories.

52.     As a result of its own investigative efforts, however, Louis Vuitton continued to find Vendors selling Counterfeit Louis Vuitton Products at the Market.

53.     On September 11, 2018, Louis Vuitton's counsel sent an email to Defendants' counsel identifying seven Vendors selling Counterfeit Louis Vuitton Products during an investigation conducted on September 2, 2018.  On or about October 12, 2018, counsel for Defendants confirmed that eight individuals had been banned from the Market as a result of Louis Vuitton's September 11, 2018 notice.

54.     Thereafter, on December 10, 2018, Louis Vuitton's counsel sent an email to Defendants' counsel identifying one Vendor selling Counterfeit Louis Vuitton Products during an investigation conducted on December 9, 2018.  On or about December 18, 2018, counsel for Defendants confirmed that the Vendor had been identified, was banned from the Market, and his name was added to the Vendor List.

55.     On May 13, 2019, Louis Vuitton's counsel sent an email to Defendants' counsel identifying two Vendors selling Counterfeit Louis Vuitton Products during an investigation conducted on May 11, 2019.  On or about May 23, 2019, counsel for Defendants confirmed that the Vendors had been identified, were banned from the Market, ████████████████████████ ████████████

56.     By late 2022, Louis Vuitton had grown suspicious of Defendants' claims that no Counterfeit Louis Vuitton Products had been identified at the Market since the June 2018 Settlement Agreement was signed.  Louis Vuitton's investigators visited the Market on multiple

occasions from October 2022 through April 2023 were able to identify and make numerous purchases of Counterfeit Louis Vuitton Products, including during inspections on:

- October 29, 2022, which identified and resulted in purchases from six Vendors;

- November 5, 2022, which identified and resulted in purchases from eleven Vendors;

- November 12, 2022, which identified and resulted in purchases from eleven Vendors;

- November 19, 2022, which identified and resulted in purchases from nine Vendors;

- November 26, 2022, which identified and resulted in purchases from ten Vendors; and

- April 2, 2023, which identified and resulted in purchases from seventeen Vendors.

57.     During its investigation, on January 26, 2023, Louis Vuitton sent a letter to Defendants requesting the current copy of the Vendor List for the Market.

58.     On February 23, 2023, Defendants responded via letter and ███████████ ████████████████████████████████████████████████████ which contained only eight Vendor names, had not been subsequently updated because Defendants had not identified any vendors with Counterfeit Louis Vuitton Products since the June 2018 Settlement Agreement. Notably, the ██████st include none of the dozens of Vendors identified by Louis Vuitton in the years leading up to the June 2018 Settlement Agreement ██████████ and, despite Defendants' counsel's representations, none of the Vendors identified by Louis Vuitton in its notice letters of December 10, 2018 or May 13, 2019, respectively.  Indeed, the only names on the ████████ were those Vendors identified as a result of Louis Vuitton's September 11, 2018 notice letter.

59.     In total, from October 2022 to April 2023, Louis Vuitton identified and was able to purchase Counterfeit Louis Vuitton Products from over twenty unique Vendors at the Market— at least eight of whom had previously been identified by Louis Vuitton to Defendants or were otherwise already known to Defendants.

60.     Had Defendants complied with the 2018 Settlement Agreement, these Vendors should have been ███████████████████ and their tenancy at the market immediately terminated.  Had Defendants complied with ████████████████████████████████ ██████████████████, numerous other Vendors would have also been discovered by Defendants and reported to Louis Vuitton.  These Vendors too, should have been ███████ ██████████████ and their tenancy at the market immediately terminated.

61.     On August 14, 2023, Louis Vuitton notified Defendants of each of the breaches detailed above and provided evidence of the ongoing sale of Counterfeit Louis Vuitton Products. Louis Vuitton's letter also requested that Defendants take immediate corrective actions including but not limited to taking steps to comply with their obligations under the June 2018 Settlement Agreement in full, ████████████████████████████████████ █████████ commence appropriate enforcement measures including Vendor terminations, and appropriately compensate Louis Vuitton for the damage caused to it from the Vendors' unlawful actions.

62.     By December 2023, Defendants still had not ██████████████████, ceased to provide any ████████████████████████ are privileged, and had not taken actions to curb Vendors engaging in unlawful activities.  To this date, Defendants continue to breach the 2018 Settlement Agreement and turn a blind eye to the substantial counterfeiting activities taking place at the Market.

**F.     Defendants' Ongoing Unlawful Conduct**

63.     By their actions, Defendants have created a safe haven for counterfeiting activities, including the sale of Counterfeit Louis Vuitton Products.  Defendants' actions are willful and in violation of both Louis Vuitton's intellectual property rights and Defendants' own obligations under the June 2018 Settlement Agreement.

64.     The Market is a controlled environment where Defendants govern the use of the space.  Upon information and belief, Defendants provide all services necessary for their Vendors to operate at the Market.  Among other things, the Market provides its Vendors with basic requirements such as space, security, parking, maintenance of the Market's grounds (including cleaning and repair), and restrooms.  Moreover, Defendants have advertised and promoted the Market, and have worked to attract customers to the Market.

65.     Upon information and belief, at all relevant times, Defendants have had the right and ability to control their Vendors and/or the use of the space supplied to the Vendors (*i.e.*, the means of the Vendors' infringement).  Specifically, Defendants have the ultimate form of control over their Vendors' means of infringement insofar as Defendants have the ability to: (a) refrain from renewing the leases (and/or licenses) of Vendors who have been engaged in the sale of Counterfeit Louis Vuitton Products; (b) terminate the leases (and/or licenses) of Vendors who have been engaged in the sale of Counterfeit Louis Vuitton Products; (c) seek the voluntary departure of Vendors who have been engaged in the sale of Counterfeit Louis Vuitton Products; and/or (d) promptly initiate eviction proceedings against Vendors who have been engaged in the sale of Counterfeit Louis Vuitton Products.

66.     Despite the foregoing and notwithstanding their express agreement to do so pursuant to the June 2018 Settlement Agreement, Defendants have failed to implement adequate

rules or adopt or employ appropriate practices or procedures that would reduce or eliminate the widespread sale of Counterfeit Louis Vuitton Products occurring at the Market.  As a result, the Market, with Defendants' full knowledge, is a hotbed for illicit activity with Vendors engaging in the open, notorious, and/or obvious sale of, among other things, Counterfeit Louis Vuitton Products.

68.    While such counterfeiting activities were often open and/or obvious, on many occasions, Defendants were repeatedly and specifically notified of the sale of counterfeit goods taking place at the Market, including the offer for sale and sale of Counterfeit Louis Vuitton Products, and took no action to stop it.

68.    Accordingly, Defendants knew, or had reason to know, that a substantial number of Counterfeit Louis Vuitton Products have been sold or offered for sale at the Market. Defendants, moreover, knew that Louis Vuitton has never authorized the sale of Louis Vuitton Products or the use of the Louis Vuitton Trademarks at the Market.

69.    Nevertheless, Defendants allowed counterfeiting to occur at the Market on a massive scale despite Louis Vuitton's (and other intellectual property owners') pleas to Defendants to "clean up" the Market, and even though Defendants knew, know, had reason to know, or have reason to know, that trademark counterfeiting is against the law.

70.    Despite numerous warnings that the Vendors sold or offered for sale Counterfeit Louis Vuitton Products, Defendants failed to adequately supervise their premises and comply with their contractual obligations under the June 2018 Settlement Agreement and with other independent legal obligations to curb counterfeiting at the Market.

71.    Moreover, Defendants have been aware of, materially contributed to, and obtained a financial benefit from the sale of merchandise bearing counterfeit trademarks at the

Market (including Counterfeit Louis Vuitton Products).  Defendants reap substantial financial benefits derived from the sale of counterfeit goods at the Market, including, but not limited to, increased: customer traffic; numbers of Vendors; storefront/booth rental revenue; and value of their business. Defendants are financially motivated to "turn a blind eye" to counterfeiting at the Market, or to affirmatively assist in the counterfeiting conduct and protect their counterfeiting Vendors.  This is because Defendants revenues and profits would plummet if they were to evict their counterfeiting Vendors.   In fact, if Defendants kicked out all Vendors engaged in counterfeiting, Defendants would have significantly fewer Vendors left and be significantly less attractive to the many consumers who seek out the Market specifically for its reputation in selling counterfeit goods.

72.     Defendants have also benefited from Louis Vuitton honoring the terms of the June 2018 Settlement Agreement and each of Louis Vuitton's many attempts to amicably resolve this issue without resorting to litigation.

73.     Under the circumstances, Defendants had an obligation to take all steps necessary to curb or end the sale, or offer for sale, of Counterfeit Louis Vuitton Products at the Market. Defendants, however, failed to do so.

74.     The actions of Defendants as described herein are intentional.  Defendants owned, operated, and managed a Connecticut business centered on the sale of counterfeit merchandise, including Counterfeit Louis Vuitton Products.   Defendants recklessly disregarded Louis Vuitton's rights and/or willfully blinded themselves to permit the sale of Counterfeit Louis Vuitton Products.   As a result of Defendants' intentional and injurious actions, this is an exceptional case under 15 U.S.C. § 1117(a), entitling Louis Vuitton to all remedies set forth in 15 U.S.C. §§ 1117(b) and (c).

75.     As described in the foregoing Paragraphs, Defendants have also been unjustly enriched by allowing their Vendors to illegally use and misappropriate the Louis Vuitton Trademarks.

76.     Defendants also intentionally entered into the June 2018 Settlement Agreement, and then continued to willfully and recklessly disregard their obligations under the June 2018 Settlement Agreement and turn a blind eye to the resulting injury to Louis Vuitton.

77.     The counterfeiting of the Louis Vuitton Trademarks at the Market is likely to cause, is causing, and will continue to cause a likelihood of confusion, deception, and mistake on the part of consumers, the public, and the trade.  Defendants' conduct has caused, and will continue to cause, irreparable harm to Louis Vuitton.  Accordingly, Louis Vuitton has no adequate remedy at law, and Defendants must be enjoined from any further conduct contributing in any way to the counterfeiting of the Louis Vuitton Trademarks.

78.     As a direct and proximate result of Defendants' wrongful and brazen acts, Louis Vuitton has suffered harm in an amount that has not yet been precisely determined but is well in excess of $75,000.

79.     Unless enjoined by this Court, Defendants intend to continue their breach of the June 2018 Settlement and their wrongful infringement upon and profiting from the use of the Louis Vuitton Trademarks and sale of Counterfeit Louis Vuitton Products.

## CLAIM I: CONTRIBUTORY TRADEMARK LIABILITY

### (Against All Defendants)

80.     Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 79 as if fully set forth herein.

81.     The unauthorized use of the Louis Vuitton Trademarks at the Market by several

of Defendants' Vendors infringes upon each of Louis Vuitton's federally registered marks (*i.e.*, the Louis Vuitton Trademarks) in violation of Section 32(1) of the Trademark Act of 1946 as amended (the "Lanham Act"), 15 U.S.C. § 1114(1).

82.    The unauthorized use of the Louis Vuitton Trademarks at the Market by several of Defendants' Vendors has caused and will continue to cause confusion, mistake, and deception.

83.    Through their actions, inaction, and conduct, Defendants have materially contributed to the above-described counterfeiting and infringement of the Louis Vuitton Trademarks.  Among other things, Defendants supplied the site, space, facilities, and a marketplace to Vendors that Defendants knew or had reason to know were selling, or offering for sale, Counterfeit Louis Vuitton Products.  Hosts, such as Defendants, who permit their Vendors to use the premises cannot remain willfully blind to their Vendors' directly infringing acts.

84.    Defendants' conduct constitutes contributory infringement of the Louis Vuitton Trademarks.

85.    By reason of the foregoing, Defendants are liable to Louis Vuitton for any and all of the remedies available to Louis Vuitton under 15 U.S.C. §§ 1116 and 1117 of the Lanham Act.

## CLAIM II: BREACH OF CONTRACT

### (Against All Defendants)

86.    Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 85 as if fully set forth herein.

87.    Upon information and belief, Defendants have materially breached the June 2018 Settlement Agreement by, among other things, failing to: ████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ and otherwise engaging or otherwise being involved in, whether through direct action, indirect action, or failure to act, the ongoing sale and offers for sale of Counterfeit Louis Vuitton Products at the Market.

88.     Defendants' breaches have damaged and negatively impacted Louis Vuitton in many ways, including through financial loss to an extent and in amounts that is yet to be ascertained but will exceed $75,000.

89.     Defendants' acts have also caused and will continue to cause irreparable harm to Louis Vuitton in ways and extents for which there is no adequate remedy at law, including through the loss of its trademark rights, brand value, and by threatening consumer welfare and creating consumer confusion.

### CLAIM III: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

**(Against All Defendants)**

90.     Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 89 as if fully set forth herein.

91.     By willingly entering into the June 2018 Settlement Agreement, Defendants assumed the obligation to exercise good faith and fair dealings in fulfilling their obligations to Louis Vuitton pursuant to its terms.

92.     Defendants breached this covenant of good faith and fair dealing that is inherent in all contractual agreements by intentionally and knowingly breaching their obligations as set forth above and recklessly disregarding the sale of Counterfeit Louis Vuitton Products and the

resulting damage to Louis Vuitton, despite having ample knowledge of the irreparable harm their breach would cause.

93.     Furthermore, despite repeatedly receiving notice of their breach and the devasting consequences, Defendants intentionally and recklessly continued their wrongful conduct.

94.     Defendants' actions also offend public policy, federal law, and pose a serious risk to the public by threatening consumer welfare, enabling serious consumer deception, and creating confusion.

95.     As a result of Defendants' breach, Louis Vuitton has been damaged to an extent and in amounts that is yet to be ascertained but will exceed $75,000.

96.     Defendants' breach of the covenant has also resulted in significant injury to Louis Vuitton and in ways that have no adequate remedy at law.

<u>**CLAIM IV: UNJUST ENRICHMENT**</u>

**(Against All Defendants)**

97.     Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 96 as if fully set forth herein.

98.     As set forth above, Defendants have been unjustly enriched through their wrongful actions including by continuing to benefit from Louis Vuitton's adherence to the June 2018 Settlement Agreement notwithstanding Defendants' breaches, and by continuing to profit and derive revenues from the Vendors who trade in Counterfeit Louis Vuitton Products and the resulting customers and foot traffic this unlawful activity attracts.

99.     As a result of Defendants' breach, Louis Vuitton has been damaged to an extent and in amounts that is yet to be ascertained but will exceed $75,000.

100.     Defendants' breach of the covenant has also resulted in significant injury to Louis

Vuitton and in ways that have no adequate remedy at law.

### CLAIM V: VICARIOUS LIABILITY – ALL COUNTS

#### (Against Charles Cheslock)

101.    Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 100 as if fully set forth herein.

102.    As a moving, active and conscious force behind Defendants' unlawful conduct, Defendant Charles Cheslock is jointly and severally liable with Defendants CGC, one or more John Does 1-10, and/or one or more of ABC Corps. 1-10 under all counts of this Complaint.

### CLAIM VI: VICARIOUS LIABILITY – ALL COUNTS

#### (Against John Does 1-100)

103.    Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 102 as if fully set forth herein.

104.    As a moving, active and conscious force behind Defendants' unlawful conduct, John Does 1-100 are jointly and severally liable with Defendants CGC and Cheslock, and/or one or more of ABC Corps. 1-10 under all counts of this Complaint.

### CLAIM VII: VICARIOUS LIABILITY – ALL COUNTS

#### (Against ABC Corps. 1-10)

105.    Louis Vuitton repeats, realleges, and incorporates the allegations set forth above in Paragraphs 1 through 104 as if fully set forth herein.

106.    As a moving, active and conscious force behind Defendants' unlawful conduct, ABC Corps. 1-10 are jointly and severally liable with Defendants CGC and Cheslock, and/or one or more of John Does 1-100 under all counts of this Complaint.

### PRAYER FOR RELIEF

**WHEREFORE**, Louis Vuitton demands Judgment against Defendants, and each of them, jointly and severally, as follows:

A.    Finding that Defendants CGC, Cheslock, ABC Corps. (1-10), and John Does (1-100) have infringed the Louis Vuitton Trademarks in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a).

B.    Finding that Defendants CGC and Cheslock have breached the June 2018 Settlement Agreement and the Implied Covenants of Good Faith and Fair Dealing, and in so doing, have been unjustly enriched and that pursuant to such a finding, enter judgement awarding:

    1.    Monetary damages;

    2.    Attorneys' fees and costs as allowed by the June 2018 Settlement Agreement;

    3.    Punitive Damages to the fullest extent allowed by law; and

    4.    All such further relief whether at law or in equity that the Court deems to be just and appropriate.

C.    That pursuant to and in accordance with Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, preliminary and permanent injunctions be issued enjoining the Defendants and each of them, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from, directly or indirectly:

    1.    Counterfeiting or infringing any of the Louis Vuitton Trademarks;

    2.    Causing, contributing to, enabling, facilitating, allowing, tolerating, or participating in the counterfeiting or infringement of any of the Louis Vuitton Trademarks;

3.     Allowing Vendors at the Market who have been or are currently engaged in the sale, or offer for sale, of Counterfeit Louis Vuitton Products to continue doing business at the Market;

4.     Using any reproduction, counterfeit, copy, or colorable imitation of the Louis Vuitton Trademarks in any publicity, advertisement, importation, promotion, display, distribution, sale, or offer for sale, of goods or otherwise pertaining to the Market;

5.     Using the Louis Vuitton Trademarks in a manner calculated to falsely represent, or which has the effect of falsely representing, that products sold at the Market are sponsored by, authorized by, or in any way associated with Louis Vuitton; and

6.     Otherwise unfairly competing with Louis Vuitton.

C.     That Louis Vuitton be awarded statutory damages from each of the Defendants in an amount of up to $2,000,000 per counterfeited mark per each type of goods (as provided by 15 U.S.C. § 1117(c) of the Lanham Act as amended), or, at Louis Vuitton's election, that Defendants be required to account to Louis Vuitton for all damages and/or profits resulting from the unlawful activities of Defendants and/or their Vendors, and that the award to Louis Vuitton be trebled as provided for under 15 U.S.C. §1117.

D.     That Louis Vuitton be awarded a sum that is just under the facts and circumstances of this action in accordance with 15 U.S.C. § 1117.

E.     That Louis Vuitton be awarded pre-judgment interest in accordance with 15 U.S.C. §1117.

F.     That Louis Vuitton be awarded its costs and expenses of this action, including, but not limited to, Louis Vuitton's attorneys' fees, investigators' fees, and other costs as

provided for under 15 U.S.C. § 1117.

G.     That Louis Vuitton be awarded all other and further relief as the Court may deem

just and proper under the facts and circumstances of this case.

## **JURY DEMAND**

Trial by jury is hereby demanded as to all issues so triable.

Dated: August 5, 2024                          Respectfully submitted,

OF COUNSEL:                                   */s/ Chris Paparella*
Joseph F. Ecker (DC1657463)                   Chris Paparella (CT28901)
STEPTOE  LLP                                   Michael J. Allan (NY2929891)
1330 Connecticut Avenue, NW                   STEPTOE  LLP
Washington, DC 20036                          1114 Avenue of the Americas
jecker@steptoe.com                            New York, NY 10036
(202) 429-3000                                cpaparella@steptoe.com
                                              mallan@steptoe.com
John H. Zacharia (DC 456867)                  (212) 506-3900
ZACHARIA LAW PLLC
1701 Pennsylvania Avenue, NW, Suite 200        *Attorneys for Plaintiff*
Washington, D.C.  20006                        *Louis Vuitton Malletier S.A.S*
john@zacharialaw.com
(202) 845-5091