**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| |
|---|
| LOUIS VUITTON MALLETIER S.A.S., *Plaintiff*, <br><br> v. <br><br> C.G.C. ENTERPRISES, INC. *et al.*, *Defendants.* |

No. 3:24-cv-1287 (VAB)

**RULING AND ORDER ON MOTION FOR SANCTIONS AND MOTION FOR FEES**

Louis Vuitton Malletier S.A.S. ("Louis Vuitton" or "Plaintiff") has filed a motion for sanctions against C.G.C. Enterprises, Inc. ("CGC"), ABC Corps 1-10, and John Does 1-100 (collectively, "Defendants") for alleged failure to comply with the Court's December 23, 2025 Order on discovery, as well as a motion for fees under Federal Rule of Civil Procedure 37. Mot. for Sanctions and Fees, ECF No. 72.

Louis Vuitton seeks an Order: (1) directing the Defendants to pay the attorneys' fees and costs associated with the Plaintiff's motion for discovery conference and renewed motion for a discovery conference, ECF Nos. 48 and 61, under Federal Rule of Civil Procedure 37(a)(5)(A); (2) directing the Defendants to pay the reasonable expenses incurred as a result of their alleged failure to comply with the Court's December 23, 2025 Order under Federal Rule of Civil Procedure 37(b)(2)(C); (3) compelling the Defendants' complete compliance with the December 23, 2025 Order and the Plaintiff's outstanding requests for production within fourteen days; (4) warning the Defendants that further noncompliance may result in more severe sanctions; and (5) any other relief the Court deems just and proper. *Id.* at 1.

For the following reasons, the motion for sanctions is **GRANTED** and the motion for fees is **GRANTED**.

To the extent that Louis Vuitton believes that the Defendant has not fully complied with the December 23, 2025 Discovery Order, Louis Vuitton shall submit a list of what discovery remains outstanding by **July 10, 2026**. Absent a credible claim of privilege, the Defendant must produce those outstanding discovery materials by **July 24, 2026**, or risk further sanctions.

In light of the Court's Order allowing for the retaking of Mr. Cheslock's deposition under Rule 30(b)(6), *see* Order, ECF No. 93, and the parties' proposed modified scheduling orders, *see* Proposed Orders, ECF Nos. 96 and 97, the Court modifies the scheduling order to extend the fact deposition until **August 14, 2026**, in order to accommodate only the taking of Mr. Cheslock's deposition and the Defendant's compliance with this Order.

With respect to the granted motion for fees, Louis Vuitton shall submit an application and memorandum detailing the amount of expenses it will seek under Rules 37(a)(5)(A) and 37(b)(2)(C) by **September 4, 2026**. The Defendant will then have until **September 25, 2026,** to respond, with any reply by Louis Vuitton due by **October 9, 2026**.

Any such motion for attorney's fees and costs shall be limited to the reasonable expenses related to the filing of the motion for sanctions, but not any related subsequent discovery, except for any discovery determined to be outstanding as of **July 10, 2026,** and not deemed to be subject to a credible claim of privilege, and any attorney fees and expenses related to the retaking of the Cheslock deposition, which shall only include the time in the deposition, and not any time related to the preparation for any such retaking of the deposition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Founded in Paris, France in 1854, Louis Vuitton Malletier S.A.S. started as a luggage and trunks business, and has since become known for a wide range of fashion and luxury goods. Am.

Compl. ¶16, ECF No. 27. Louis Vuitton sells its products through its own boutiques as well as in related companies located within retail stores. *Id.* ¶17. Louis Vuitton is also the owner of trademarks including but not limited to "Louis Vuitton and Louis Vuitton-formative word marks, the Toile Monogram design mark, the LV Logo design mark, the Stylized Flower design marks, the Damier Design mark, and the S-Lock design mark[.]" *Id.* ¶18.

C.G.C. Enterprises, Inc. ("CGC") has owned and operated the Boulevard Flea Market ("Flea Market") located in New Haven, Connecticut since 1992. *Id.* ¶¶1, 24. The Defendants allegedly select the at least 150 vendors who operate within the market and set and enforce the policies with which the vendors must comply. *Id.* ¶26. CGC can allegedly evict vendors for violations of the policies, as well as illegal or unlawful activities. *Id.*

Vendors at the Flea Market allegedly sell counterfeit or "knockoff" luxury goods, including Louis Vuitton products. *Id.* ¶27. On November 2, 2013, the New Haven Police Department conducted a raid at the Flea Market and seized counterfeit products whose retail value was nearly $2,000,000. The raid also led to the arrest of over twenty-five individuals, including certain vendors.

On January 8, 2014, March 13, 2014, May 30, 2014, April 19, 2017, and May 30, 2017, Louis Vuitton delivered cease and desist letters to the Defendants notifying them of the products seized at the raid and identifying the vendors who were arrested. *Id.* ¶31. Despite these letters, the sales of counterfeit products allegedly continued. *Id.* ¶32. In December 2016, the New Haven Police Department conducted additional raids and once more confiscated counterfeit Louis Vuitton products and made additional arrests. *Id.* ¶32. On June 19, 2017, Louis Vuitton sent the Defendants a letter notifying them of the raid. *Id.*

Between May 2017 and March 2018, Louis Vuitton representatives visited the Flea Market multiple times and allegedly identified numerous vendors offering counterfeit Louis Vuitton products. *Id.* ¶33. Between July 2017 and March 2018, Louis Vuitton served additional cease and desist letters upon multiple vendors allegedly engaging in the sale of counterfeit products. *Id.* ¶34-35.

In June 2018, Louis Vuitton and CGC executed a settlement agreement, under which the Defendants agreed to take corrective actions to prevent further infringement. *Id.* ¶36-37. Specifically, the Defendants agreed not to provide tenancy or vendor spaces to vendors previously identified as selling counterfeit products; to maintain a list of known infringing vendors; and to take steps to enforce the ban. *Id.* ¶38-39. The Defendants agreed to retain a licensed investigator (the "Monitor") to conduct monthly inspections of the Flea Market and generate monthly reports, which would be provided to the Plaintiff every three months. *Id.* ¶40. If the Defendants or the Monitor identified any infringing products, the settlement agreement required the Defendants to inform Louis Vuitton and immediately terminate and evict the vendor in question. *Id.* ¶40-41. If there was uncertainty regarding the infringing nature of a product, the Defendants agreed to notify Louis Vuitton so Louis Vuitton could determine whether the goods were counterfeit. *Id.* ¶41. Louis Vuitton also reserved the right to conduct investigations and train the Defendants in the identification of counterfeit products. *Id.* ¶42. The settlement agreement remains in force to this day. *Id.* ¶44.

Since the settlement agreement was executed in June 2018, Louis Vuitton has allegedly received copies of the Monitor's reports sporadically, as opposed to every three months. *Id.* ¶47-48. And though the vendors in the market allegedly continue to sell counterfeit products in violation of the settlement agreement, no such vendors have allegedly been identified in any of

4

the Monitor's reports. *Id.* ¶¶45, 49. Throughout 2018 and 2019, Louis Vuitton allegedly sent e-mails to the Defendants' counsel identifying infringing vendors, and the Defendants responded by banning those vendors from the market and adding their names to the list of infringing vendors. *Id.* ¶¶51-53.

From October 2022 to April 2023, Louis Vuitton's investigators allegedly visited the Flea Market multiple times and were allegedly able to identify and purchase counterfeit Louis Vuitton products. *Id.* ¶54. On January 26, 2023, Louis Vuitton allegedly requested a current copy of the list of infringing vendors from the Defendant. *Id.* ¶55. On February 23, 2023, the Defendants allegedly provided a list dated October 15, 2018, that included only eight vendor names and had not been updated since the June 2018 settlement agreement. *Id.* ¶56.

On August 14, 2023, Louis Vuitton allegedly notified the Defendants by letter of the various breaches they had discovered and provided evidence of the allegedly ongoing sale of counterfeit products. *Id.* ¶59. In this letter, Louis Vuitton allegedly requested that the Defendants take immediate corrective actions, including those outlined in the June 2018 settlement agreement. *Id.* By December 2023, the Defendants allegedly had still not updated the vendor list, provided the periodic reports, or taken actions to evict the infringing vendors. *Id.* ¶60.

### B. Procedural History

On August 5, 2024, Louis Vuitton initiated suit against the Defendants and filed the underlying Complaint. *See* Compl., ECF No. 1.

On November 4, 2024, CGC filed a motion to dismiss. Mot. to Dismiss, ECF No. 25.

On November 25, 2024, Louis Vuitton filed an Amended Complaint. Am. Compl., ECF No. 27.

The next day, the Court denied as moot CGC's motion to dismiss. *See* Order, ECF No. 31.

On December 30, 2024, CGC filed an Answer, which included counterclaims. Answer, ECF No. 36.

On February 11, 2025, the Court entered a scheduling order for pre-trial deadlines based on the parties' Rule 26(f) report. *See* Scheduling Order, ECF No. 38. Under the scheduling order, fact depositions were to be completed by August 1, 2025. *Id.*

Following a joint motion for extension of time, ECF No. 43, the Court modified the case schedule and extended the time to complete fact depositions until September 19, 2025. See Order, ECF No. 44.

On September 2, 2025, Louis Vuitton filed a motion for a discovery conference, ECF No. 48, which the Court granted, ECF No. 49.

After further briefing on the motion for a discovery conference, the Court cancelled the conference and extended the deadline for completing fact depositions until October 20, 2025. *See* Order, ECF No. 57.

On September 25, 2025, the parties filed a joint motion to suspend proceedings in order to proceed to mediation, ECF No. 58, which the Court granted, ECF No. 59.

On November 12, 2025, the parties filed a joint status report informing the Court that "[t]he mediation did not resolve the Parties' dispute." Joint Status Report 1, ECF No. 60.

On November 21, 2025, Louis Vuitton renewed its motion for a discovery conference, ECF No. 61, which the Court granted, ECF No. 62.

Following subsequent briefing on the motion for a discovery conference, the Court issued an order cancelling the discovery conference, Order, ECF No. 70, and requiring the following categories of discovery:

1. "C.G.C. Enterprises, Inc. [] shall produce any and all information, including but not limited to any and all correspondence [], and documents [] relating to its compliance with the June 2018 Settlement Agreement from June 8, 2018 to the present day."

2. "C.G.C. Enterprises, Inc. shall produce to Louis Vuitton documentation about its operational records maintained regarding its vendors from the date of the June 2018 Settlement Agreement to the present day."

3. "C.G.C. Enterprises, Inc. shall produce to Louis Vuitton its financial records from the date of the June 2018 Settlement Agreement to the present day, including but not limited to any tax returns."

4. "C.G.C. Enterprises, Inc. shall produce to Louis Vuitton any and all communication records, whether cellphone records, or e-mails within its possession, custody or control, related to its compliance with the June 2018 Settlement Agreement, including but not limited to any actions taken with respect to the activities covered by this Agreement."

5. "C.G.C. Enterprises, Inc. shall produce to Louis Vuitton any and all communications and agreements with other trademark holders, other than Louis Vuitton, whether public or non-public from the date of the June 2018 Settlement Agreement to the present."

6.   "C.G.C. Enterprises, Inc. shall produce to Louis Vuitton all non-privileged documents related to the monitoring of the Market property."

7.   "Seventh, Louis Vuitton shall produce to C.G.C. Enterprises, Inc. any and all outstanding discovery."

Order 1-4, ECF No. 71 ("Discovery Order"). The Court also amended the scheduling order and extended the deadline for fact depositions to February 13, 2026.

On February 12, 2026, Louis Vuitton filed a motion for sanctions for failure to comply with the Court's Discovery Order, as well as a motion for fees under Federal Rule of Civil Procedure 37. Mot. for Sanctions and Fees, ECF No. 72.

On February 13, 2026, the Court *sua sponte* amended the scheduling order and extended the fact deposition deadline to April 17, 2026.

On February 27, 2026, the Defendants filed a memorandum in opposition to Louis Vuitton's motion for sanctions and fees. Mem. in Opp., ECF No. 74 ("Mem. in Opp.").

On March 6, 2026, Louis Vuitton filed a reply. Reply, ECF No. 75 ("Reply").

## II.   STANDARD OF REVIEW

### A.  Motion for Sanctions

Federal Rule of Civil Procedure 37 allows the Court to impose a variety of sanctions for discovery-related abuses and affords the Court "broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."). Rule 37 sanctions serve a three-fold purpose: (1) to "ensure that a party will not be able to profit from its

own failure to comply" with court orders; (2) to "secure compliance with the particular order at hand"; and (3) to serve as a "general deterrent" for noncompliance, in both the "instant case" and in "other litigation." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

When deciding on the appropriate sanction, the Court considers "(1) the willfulness of the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the noncompliant party was warned that further noncompliance could result in sanctions." *Kellogg v. J.C. Penney Corp.*, No. 11-CV-733 (RNC), 2013 WL 308985, at *1 (D. Conn. Jan. 25, 2013) (citing *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)). The Court also should consider whether the moving party has been prejudiced by the noncompliance, "though a showing of prejudice is not a requirement for" the imposition of sanctions under Federal Rule of Civil Procedure 37. *Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 726 F. Supp. 2d 159, 178 (D. Conn. 2010).

## B. Motion for Fees

Under Federal Rule of Civil Procedure 37(a)(5)(A), where a motion for an order compelling disclosure or discovery is granted, the Court must award the movant's "reasonable expenses incurred in making the motion, including attorney's fees" against the party, lawyer, or both, unless (1) the "movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (2) the opposing party's nondisclosure was "substantially justified;" or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Similarly, under Federal Rule of Civil Procedure 37(b)(2)(C), where a party "fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), instead of or in addition to particular sanctions, "the court must order the disobedient party. . . to

9

pay reasonable expenses, including attorney's fees, caused by the failure" to comply with the Discovery Order "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(b)(2)(C).

Under both subsections, the text of the rule indicates that the award of expenses is mandatory unless an enumerated exception applies. And the disobedient party bears the burden of showing that such an exception applies. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) ("Rule 37 places the burden of proof on the disobedient party to show 'that his failure is justified or that special circumstances make an award of expenses unjust.'") (citing *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008)).

In determining whether the disobedient party's noncompliance was "substantially justified," courts look to whether the disobedient party "raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." 8B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 2288 (3d ed. 2016); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (substantially justified "has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute[.]'"). "This standard holds the opposing party to an objective test of reasonableness and does not require that he acted in good faith." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (citing *Pierce,* 487 U.S. at 565).

## III.    DISCUSSION

Louis Vuitton moves for sanctions against the Defendant for its failure to comply with the Court's Discovery Order. Louis Vuitton also moves for fees and costs under both Federal Rules of Civil Procedure 37(a)(5)(A) and 37(b)(2)(C).

The Court discusses Louis Vuitton's entitlement to sanctions and fees in turn.

## A. The Motion for Sanctions

Under Rule 37 of the Federal Rules of Civil Procedure, "all litigants, including those proceeding pro se, have an obligation to comply with this Court's orders." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (cleaned up) (quoting *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)). Louis Vuitton seeks an Order compelling CGC's compliance with the Court's Discovery Order and Louis Vuitton's outstanding requests for production within fourteen days and warning CGC that further noncompliance may result in more severe sanctions.

Louis Vuitton argues that several factors relevant to the Court's determination under Rule 37 weigh in its favor. First, Louis Vuitton argues that CGC's failure to timely comply with the Discovery Order was willful, since the Defendant knew or should have known that the District of Connecticut's Local Rule 37(d) mandated compliance by January 6, 2026. Mem. of Law in support of Mot. for Sanctions and Fees 6-7, ECF No. 72-1 ("Mot."); *see* D. Conn. L. Civ. Rule 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order."). Because CGC is a Connecticut corporation represented by local counsel, Louis Vuitton argues that the Defendant "cannot credibly claim ignorance of the Local Rules." Mot. at 7. Second, Louis Vuitton argues that CGC's noncompliance has persisted since the Discovery Order was entered and that "entire categories of documents in the court's Discovery Order[] remain outstanding." *Id.* at 8. Louis Vuitton argues that CGC "had not even searched for several categories of clearly responsive materials until after Louis Vuitton filed multiple motions and follow-up communications" and that "the searches [CGC] is performing now remain defective." *Id.* at 9.

11

Louis Vuitton also argues that CGC's noncompliance occurs "against the backdrop of months of requests for the same materials well before the court issued the Discovery Order," thereby prejudicing Louis Vuitton's ability to prepare its case. *Id.* at 7-8. Third, Louis Vuitton argues that it repeatedly reminded CGC of the deadline to produce the required documents. *Id.* at 9.

CGC responds that sanctions are not warranted, since compliance with the Court's Discovery Order was "already well underway as of the date of filing [the motion for sanctions], and it has now been completed and certified." Mem. in Opp. at 1. CGC argues that "[t]here is no outstanding category of documents, no ongoing violation, and nothing left for this Court to compel[,]" thereby "render[ing] Louis Vuitton's Motion largely moot." *Id.* CGC also notes that following the Court's Discovery Order, CGC "undertook extensive efforts to search for, locate, review, and produce" the documents encompassed within the Order, but these efforts were complicated by the personal family medical situation of Mr. Carl Cheslock "who is the person most knowledgeable about CGC's records." *Id.* at 2. CGC argues that it disclosed these circumstances to Louis Vuitton before the present motion was filed, and continued to make significant efforts towards full compliance, which it has now completed. *Id.* at 2.

CGC further argues that to comply with the Discovery Order, it formulated a "search protocol" covering four sources of data: physical files located in the office at the Market, CGC's email, CGC's mobile telephone, and CGC's desktop computer. *Id.* at 5. Before February 6, 2026, CGC allegedly shared this search protocol, including search terms and parameters, with Louis Vuitton and invited comments, though Louis Vuitton allegedly did not respond to this, nor to CGC's invitation to meet and confer on outstanding issues. *Id.* at 5, 7.

Finally, CGC argues that any prejudice caused by its noncompliance was curable by "narrower remedies," which CGC proposed during the meet-and-confer process. And since the

Court extended the fact-deposition deadline to April 2026, CGC argues that Louis Vuitton retains the ability to respond to and further address the completed production. CGC argues that because it did not willfully defy the Court's Discovery Order but rather attempted in good faith to comply with it "under extraordinary strain," and because no non-curable prejudice has occurred, the motion for sanctions should be denied. *Id.* at 3.

Louis Vuitton disagrees that CGC has fully complied with the terms of the Discovery Order. Reply at 1. Louis Vuitton argues that CGC's search protocol was deficient and underinclusive. For example, Louis Vuitton argues that the "search for communications and agreements with other trademark holders (as required by the Order) was little more than a selective review of its counsel's files for some, but not all, brand names previously identified by Louis Vuitton," *id.* at 5; that CGC "only searched one email account despite repeated prior confirmation that Market business was conducted using multiple email addresses," *id.* at 4; that CGC "only applied word searches to its image files—a method that would not detect, among other things, merchandise bearing non-text based design trademarks," *id.* at 5; that CGC "inappropriately redacted hundreds of pages of vendor records" that "must be produced [under] the Protective Order in this case" which "render[s] numerous documents effectively unusable," *id.* at 6; and that CGC "did not search its Box.com online storage account that stored inter alia, vendor files," *id.*

Even if CGC has now complied, Louis Vuitton argues that "late production does not erase or excuse CGC's violation or undo the resulting prejudice." *Id.* at 2. Louis Vuitton criticizes CGC's attempt to reframe the motion for sanctions as a motion to compel, which CGC argues becomes moot once the disputed discovery has been produced; Louis Vuitton argues that unlike a motion to compel, a motion for sanctions does not become moot after production. *Id.* at

2-3. Louis Vuitton argues that CGC's noncompliance has caused ongoing and concrete prejudice to it by delaying discovery; incurring costs associated with obtaining the Discovery Order and the motion for sanctions; and incurring costs associated with repeated meet-and-confers, drafting and sending follow-up letters and e-mails, and assessing the adequacy of CGC's productions.

The Court agrees, in part.

Under Rule 37, the Court considers the four "*Agiwal* factors" in deciding whether to impose sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009) (cleaned up); *see also J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025) (referring to these four factors as the "*Agiwal* factors"). "These factors are not exclusive, and they need not each be resolved against the party" opposing sanctions. *Id.* (internal quotation marks and citation omitted). In deciding whether these factors are met, "the district court is free to consider the full record in the case[.]" *Id.* at 147 (cleaned up). "In other words, in determining whether Rule 37 sanctions are warranted, the district court may weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *Id.* (internal quotation marks and citation omitted).

As to the first *Agiwal* factor, "[n]on-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Lee v. Connecticut Dep't of Child.*, No. 3:11CV01910 (AWT), 2015 WL 12991321, at *5 (D. Conn. Sept. 30, 2015), *aff'd sub nom. Lee v. Katz*, 669 F. App'x 57 (2d Cir. 2016) (cleaned up). "A party's persistent refusal to comply

with a discovery order presents sufficient evidence of wil[l]fulness, bad faith or fault." *Id.* (cleaned up).

The Court's Discovery Order clearly required CGC to produce all information, correspondence, and documentation related to CGC's compliance with the June 2018 settlement agreement. *See* Discovery Order at 1-4. And the correspondence exchanged between parties' counsel indicates that CGC understood the scope of the Court's Order. *See* Exhibits B, C, D, E, Mot. for Sanctions, ECF Nos. 72-3, 72-4, 72-5, 72-6. The Court presumes that the parties are familiar with the Local Rules governing these proceedings, including the deadlines for the production of discovery following a court order.

The record shows, however, that there were extraneous factors that contributed to CGC's non-compliance and that these "unforeseen circumstances affecting the relevant document custodians" were communicated to Louis Vuitton, albeit a week after the January 6, 2026 deadline. Exhibit B at 2, ECF No. 72-3. Nonetheless, CGC engaged with Louis Vuitton in good faith, produced discovery on a rolling basis, met and conferred with Louis Vuitton's counsel, welcomed revisions to its search protocol, and invited Louis Vuitton to identify missing discovery. While CGC's production may be incomplete, on this record, CGC's noncompliance is not willful.

The second *Agiwal* factor concerns "the efficacy of lesser sanctions," 555 F.3d at 302, which may include, for example, "repeatedly allowing [CGC] additional time to comply with the discovery orders, informing [CGC] of the actions he must take in order to comply with the orders, and warning [CGC] about the threat of dismissal." *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990). The Court has taken measures to accommodate the discovery disputes in this case, including repeatedly extending the deadline to complete fact discovery, most recently until

April 17, 2026, and guiding the parties towards resolution. *See* Order, ECF No. 73; Order, ECF No. 57. Indeed, these lesser sanctions have resolved many of the parties' conflicts. Given that the present dispute concerns the production of specific categories of outstanding discovery materials, sanctions in the form of an order requiring such production and warning that further noncompliance may result in more severe sanctions are a well-tailored and efficacious remedy.

The third *Agiwal* factor asks about the duration of the period of noncompliance. The Court disagrees with Louis Vuitton that the Defendant's period of noncompliance begins at some point before the Court issued the Discovery Order. Although Louis Vuitton can credibly argue that it should not have taken the motion practice, informal resolution procedures, and eventual court order in order for CGC to comply with its discovery obligation, the Court's actual Discovery Order is the appropriate starting point. *See 3801 Beach Channel, Inc. v. Shvartzman*, No. 05 Civ. 207 (CBA) (JO), 2007 WL 879668, at *4 (E.D.N.Y. Mar. 21, 2007) (calculating period of noncompliance from date of court's first order directing defendants to produce outstanding discovery). Because the Discovery Order did not specify a deadline for compliance, under the Local Connecticut Rules, CGC was required to comply by January 6, 2026. *See* D. Conn. L. Civ. Rule 37(d). Assuming CGC had fully complied with the Discovery Order by February 27, 2026, when it filed its memorandum in opposition, CGC would have been noncompliant with the Court's Discovery Order for just shy of two months.

Although courts "have found noncompliance for a period of several months sufficient to warrant dismissal or default," *Urbont v. Sony Music Entm't*, No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014), where the period of noncompliance is relatively short, lesser sanctions are appropriate. Although the Second Circuit has affirmed sanctions for delays of as little as three months, *see Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009)

16

Case 3:24-cv-01287-VAB    Document 99    Filed 06/26/26    Page 17 of 29

(summary order), ordinarily, such a short period of noncompliance would not warrant severe sanctions. *3801 Beach Channel, Inc.*, 2007 WL 879668, at \*6 (finding that less than three months was "not a particularly long period of non-compliance" but awarding monetary sanctions against defendants who failed to comply with court orders to produce discovery). If, as Louis Vuitton suggests, CGC has still not fully complied with the Discovery Order, an order requiring the Defendant to do so is proportional to the period of noncompliance. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 362 (S.D.N.Y. 2023) (finding that delays of approximately five months in curing deficient productions are "sufficiently long to justify sanctions" but "not particularly long, which therefore weighs against imposing the most severe sanction of dismissal" (cleaned up)).

The final *Agiwal* factor asks "whether the non-compliant party had been warned of the consequences of noncompliance." Although the Defendant has been warned of such consequences with respect to a different discovery dispute, *see* Order, ECF No. 93 ("[I]f Mr. Cheslock appears for this second deposition and is inadequately prepared . . . the Court will have to consider what further relief, if any, is necessary" under Rule 37), it has received no similar warning with respect to the present issue. Thus, the last *Agiwal* factor weighs in favor of the requested sanction, namely an Order containing such a warning, as opposed to more severe sanctions.

The Court's assessment of the *Agiwal* factors supports the imposition of narrow sanctions in this case. An order requiring the Defendant to produce outstanding materials and warning that further noncompliance may result in more severe sanctions ensures that the purposes of Rule 37, namely securing compliance with the Discovery Order and serving as a general deterrent, are fulfilled. *See Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1066 (detailing Rule 37's "three-

fold purpose"). While "a showing of prejudice is not a requirement" for the imposition of sanctions under Federal Rule of Civil Procedure 37, *Aliki Foods, LLC*, 726 F. Supp. 2d at 178, the Defendant's noncompliance has indeed prejudiced the Plaintiff's ability to develop its case and to comply with the Court's discovery deadlines.

The Court recognizes, however, that there is a factual dispute as to whether the Defendant has fully complied to date with the Court's Discovery Order. To the extent that Louis Vuitton still believes that the Defendant has not fully complied with the December 23, 2025 Discovery Order, Louis Vuitton will be ordered to submit a list of what discovery mandated by the Order it believes to be outstanding by July 10, 2026. Absent a credible claim of privilege, the Defendant will be ordered to produce those outstanding discovery materials by July 24, 2026.

In light of the Court's Order allowing for the retaking of Mr. Cheslock's deposition under Rule 30(b)(6), *see* Order, ECF No. 93, and the parties' proposed modified scheduling orders, *see* Proposed Orders, ECF Nos. 96 and 97, the Court will modify the scheduling order to extend the fact deposition until August 14, 2026, in order to accommodate only the taking of Mr. Cheslock's deposition and the Defendant's compliance with this Order. If the parties seek to further extend the pretrial deadlines in this case, they may jointly file a motion to do so. The Defendant is hereby warned that further noncompliance with the Court's discovery orders may result in more severe sanctions under Rule 37.

Accordingly, the Plaintiff's motion for sanctions will be granted.

### B.  The Motion for Attorney's Fees and Costs

Louis Vuitton also seeks attorneys' fees and costs under Fed. R. Civ. P. 37(a)(5)(A) for expenses incurred from the motions for a discovery conference that preceded the Court's

18

Discovery Order, as well as under Fed. R. Civ. P. 37(b)(2)(C) for the expenses incurred as a result of the Defendant's failure to comply with the Discovery Order.

The Court discusses Louis Vuitton's entitlement under each subsection in turn.

### 1. Rule 37(a)(5)(A)

The prevailing party on a motion to compel is entitled to receive "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court may only award fees incurred in the making of a necessary motion. *See Argo Marine Sys., Inc. v. Camar Corp.*, 102 F.R.D. 280, 285 (S.D.N.Y. 1984) ("[T]he Court must make a careful determination, based upon its knowledge and experience of the litigation process, of the additional expenses incurred by defendant as a direct result of such noncompliance as is found."); *S.E.C. v. Yorkville Advisors, LLC*, No. 12-cv-7728 (GBD) (HBP), 2015 WL 855796, at *9 (S.D.N.Y. Feb. 27, 2015) ("Monetary sanctions under Rule 37(a) . . . are intended to deter discovery abuses ... [and] are designed to compensate the prevailing party for expenses it would not have incurred had the sanctioned party conducted itself properly.") (citation and internal quotation marks omitted). And "a court must order a sanction under Rule 37(a)(5) if it is forced to grant a motion to compel discovery or the requested discovery is provided after such a motion was filed." *Mantell v. Chassman,* 512 F. App'x 21, 24 (2d Cir. 2013).

Louis Vuitton argues that because the Court's Discovery Order granted, at least in part, the relief sought in the Plaintiff's motions for a discovery conference, ECF Nos. 48 and 61, Louis Vuitton is owed the attorney's fees and costs incurred from making those motions under Rule 37(a)(5)(A). Reply at 8. The Plaintiff also argues that none of Rule 37(a)(5)'s exceptions apply. First, Louis Vuitton argues that CGC cannot show that its position prior to this Court's Discovery Order was substantially justified, since CGC allegedly "withheld core categories or

19

documents for nearly a year, and conducted no meaningful custodial searches until after the Court intervened" and CGC "repeatedly denied that many of the very documents at issue even existed—something basic due diligence would have shown." *Id.* Second, Louis Vuitton argues that there are no "other circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

CGC responds that the Discovery Order simply "resolved the parties' longstanding dispute over the proper scope of several categories of discovery[.]" Mem. in Opp. at 3; *see also id.* (arguing that Rule 37 "does not exist . . . to recast good-faith and routine disputes over the proper scope of discovery into claims of year-long misconduct after the fact").

The Court disagrees.

Though fashioned as a motion for a discovery conference, Louis Vuitton's motion clearly sought an Order "to compel the production of documents and information needed for the depositions before the upcoming fact deposition deadline," Renewed Mot. for Disc. Conf., ECF No. 61, which the Court later granted, *see* Discovery Order. Specifically, Louis Vuitton sought to obtain:

> (i) relevant discovery predating the 2018 Settlement; (ii) complete Market vendor and operational records; (iii) basic financial documents; (iv) communications involving Market employees or Market personnel and disclosure of C.G.C.'s search methods; (v) complete productions of documents related to C.G.C.'s knowledge of, and responses to, notice, correspondence, or allegations from other persons or entities (including other trademark holders) related to the sale of counterfeit products at the Market, which C.G.C. has not produced despite its apparent agreement to do so; and (vi) complete production of documents related to monitoring of the Market pursuant to the 2018 Settlement.

*Id.* at 2. In its response, CGC argued that the renewed motion was not about CGC's compliance, but rather "about the proper scope of discovery." Resp. to Renewed Mot. at 2, ECF No. 64.

First, CGC successfully argued that Louis Vuitton was not entitled to pre-2018 records, since the present case only concerns the actions following the 2018 settlement agreement that resulted in its alleged breach. Discovery Order at 1-2. Second, CGC argued that the request for vendor and operational records was "exceedingly overbroad" and would "require the disclosure of what is effectively CGC's complete customer list—information that has no bearing on the specific claims in dispute and that carries obvious privacy and competitive sensitivities." Resp. to Renewed Mot. at 4-5, ECF No. 64.

But Louis Vuitton responded that these vendor records were directly relevant to the central issues in the case, as they would help "directly identify and connect vendors to the infringement evidence already in the record," and the protective order filed in the case already addressed the Defendant's privacy concerns. Reply to Resp. at 5-6, ECF No. 66. Because these vendor records are clearly "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and the protective order accounts for CGC's commercial and privacy interests, CGC's attempts to withhold this information were not substantially justified. *See ML Fashion, LLC v. Nobelle GW, LLC*, No. 3:21-CV-499(JCH), 2022 WL 19406176, at *3 (D. Conn. July 22, 2022) ("[D]efendants need to provide some other detail explaining the substantial justification other than noting that the defendants disputed the relevance of the documents. Otherwise, the exception would swallow the rule.").

Third, CGC argued that its financial records were not relevant because "Louis Vuitton cannot tie its demands for financial records to any allegedly infringing conduct" in order to

21

recover damages related to the Defendant's profits under 15 U.S.C. § 1117(a). In making this argument, the Defendant relied on an out-of-circuit case, *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303 (S.D. Ga. 2012), in which a flea market operator ("HKI") was sued for contributory trademark infringement based on the sale of counterfeit goods. There, the court declined to compel production of HKI's tax returns and found that Coach would be unable to assess statutory damages based on HKI's profits from rental. *See Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. at 1309 ("It fails to show how it can recover profit-based damages, and thus how HKI's tax returns will yield it information to that end.").

Louis Vuitton replied that "*Coach* does not bar financial discovery—it simply requires tailoring," and "[u]nlike in *Coach*, these documents . . . are directly relevant to other causes of action in this case, including Louis Vuitton's breach of contract claim and [to] clarify ownership of the Market." Reply to Resp. at 7-8, ECF No. 66. Though the Court ultimately agreed with Louis Vuitton and compelled the production of CGC's financial records, "including but not limited to any tax returns," Discovery Order at 3, CGC put forth a non-frivolous argument that required the Court's judgment. Therefore, CGC's argument against producing its financial records was substantially justified. *See Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.,* 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (finding that the "argument as to relevance . . . although not persuasive . . . could be characterized as a justification having 'substan[ce],'" and therefore "an award of attorney's fees is not warranted"); *see also Juice Creative Grp., LLC v. UncommonGood, Inc.*, No. 3:22-CV-01175 (JCH), 2023 WL 8368232, at *3 (D. Conn. Dec. 3, 2023) ("Suffice it to say that there existed a genuine dispute concerning compliance with Plaintiff's discovery requests and the Court's intervention was necessary to resolve them. While Juice partially prevailed on its motion, UG raised genuine disputes that would not justify

22

sanctioning its opposition.").

Fourth, CGC argued that it had produced all documents related to the "limited nature of its communications: a single general email account, a single market cellphone, and day-to-day communications conducted in person at the market." Resp. to Renewed Mot. at 7, ECF No. 64. CGC argued that it, as "a one-person corporation[,] does not generate or maintain the same volume of electronic documents and communications a multi-billion-dollar corporation like Louis Vuitton generates," and that it had "conducted a reasonable search for relevant documents and produced the relevant communications it found." *Id.* at 8.

Louis Vuitton responded that CGC's position ignored testimony and documents in the record showing that CGC used unsearched email addresses to communicate about operations and that its cellphone contained, but had not been searched for, responsive files. Reply to Resp. at 8, ECF No. 66. Rather, CGC "simply assert[ed] that it produced all 'relevant communications' without providing any certification of completeness or describing its search methodology." *Id.* Indeed, after the Court compelled the disclosure of "any and all communication records," CGC produced several additional documents. *See* Exhibit C, ECF No. 74-3 at 2. And though CGC attempted to justify its initial production by the fact that it is a "one-person corporation [that] does not generate or maintain the same volume of electronic documents" as a larger corporation, it later explained that "[b]ased on the volume" of the documents under this category, it would only be able to produce them by January 21, 2026. Exhibit A, ECF No. 74-1; *see* Exhibit B, ECF No. 74-2 (informing Louis Vuitton on January 21, 2026 that it would need approximately an additional week to complete the search and collection efforts); *see also* Reply at 4 (alleging that even after these productions, CGC "searched one email account despite repeated prior confirmation that Market business was conducted using multiple email addresses").

23

Given the Defendant's representations to Louis Vuitton and this Court, as well as the subsequent production of additional documents, CGC's position against producing the communication materials was not substantially justified. *See Hedgeye Risk Mgmt., LLC v. Dale*, No. 21CV3687ALCRWL, 2023 WL 4760581, at *3 (S.D.N.Y. July 26, 2023) (finding no exceptions applied and granting sanctions under Rule 37(a)(5)(A) where plaintiff repeatedly represented that it had produced all relevant communications and "[t]hose representations proved to be inaccurate however, as production by third-party Sierpinski revealed").

Fifth, CGC argued that it had already produced all non-public documents related to notices or complaints from other brands about the alleged sale of infringing products, and that any public filings in prior lawsuits were easily obtainable by the Plaintiff.

Louis Vuitton responded that CGC could more easily produce the public documents, and that Louis Vuitton also sought non-public documents that went "to the heart of [CGC's] knowledge and response to infringement by other brands." Reply at 9-10. Indeed, CGC later confirmed that it was running "searches using a more expansive approach, including settlement agreements and related materials." While the question of who bears the burden of producing public documents is one on which "reasonable people could genuinely differ," 8B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 2288 (3d ed. 2016), CGC's insistence that it had already produced all non-public documents was the product of an underinclusive search and not substantially justified.

Sixth, CGC argued that it already produced its monitoring-related documents, and that no additional materials beyond those already produced existed. *See* Resp. to Renewed Mot. at 9, ECF No. 64.

24

Louis Vuitton responded that CGC's production of the monitoring documents was incomplete, although documents produced in response to the Plaintiff's subpoena of Markle Investigations confirmed that the Monitor regularly sent reports to the Flea Market's attorneys, yet CGC neither produced them nor did it certify that none exist. *See* Reply to Resp. at 10, ECF No. 66. One of the core provisions of the 2018 settlement agreement was that CGC would retain an investigator to monitor the Flea Market and produce reports to ensure CGC's compliance. These reports, or their non-existence, are entirely relevant to Louis Vuitton's claims, and CGC's failure to conduct an initial search comprehensive enough to produce these documents that it was already legally obligated to provide to Louis Vuitton was not substantially justified.

As a result, although CGC prevailed on its objection to producing materials preceding the settlement agreement, its objections to all other categories of documents, with the exception of certain financial documents, were not substantially justified. Mostly, the discovery deficiencies raised in Louis Vuitton's motions for a discovery conference are those that are expected to be resolved without the need for motion practice and court intervention.

Accordingly, the motion for attorneys' fees and costs related to the preparation of the motion for a discovery conference, ECF No. 48, and the renewed motion for a discovery conference, ECF No. 61, will be granted.

### 2.  Rule 37(b)(2)(C)

Fed. R. Civ. P. 37(b)(2)(C) states that where a party disobeys a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply. An award of fees under this subsection is mandatory "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Susana v. NY Waterway*, 662 F. Supp. 3d 477, 493

(S.D.N.Y. 2023) (internal citations omitted). "[T]he burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party." *Id.*

Louis Vuitton argues that fees are owed under Rule 37(b)(2)(C) because CGC failed to timely comply with the Discovery Order, despite multiple reminders that the District of Connecticut's Local Rule 37(d) mandated compliance by January 6, 2026. Mot. at 6-7; *see* D. Conn. L. Civ. Rule 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order."). Because CGC is a Connecticut corporation represented by local counsel, Louis Vuitton argues that the Defendant "cannot credibly claim ignorance of the Local Rules" and that the Defendant's noncompliance is therefore "clearly willful." Mot. at 7. Louis Vuitton also argues that because CGC's noncompliance occurred "against the backdrop of months of requests for the same materials well before the court issued the Discovery Order," its continued noncompliance prejudiced Louis Vuitton's ability to prepare its case. *Id.* at 7-8.

CGC argues that granting the Plaintiff's motion for fees is inappropriate because CGC has fully complied with the Discovery Order and any previous noncompliance was substantially justified by Mr. Cheslock's personal circumstances and the intensity of the search protocol. CGC also argues that Louis Vuitton's motion seeks expenses "untethered" to the burdens allegedly caused by CGC's delay and therefore cannot be granted under Rule 37(b)(2)(C), which limits expenses to those "caused by the failure" to comply. *Id.* at 15.

Louis Vuitton replies that the Cheslocks' personal circumstances do not justify CGC's noncompliance, since CGC did not communicate these circumstances until after the January 6, 2026 deadline when Louis Vuitton informed it of its delinquent production. Reply at 4. Louis

26

Vuitton also argues that the discovery required under the Discovery Order was "neither complex nor unexpected" since "it involved fundamental categories that have been central to this matter." *Id.*

The Court agrees.

While the Court appreciates the Cheslocks' personal circumstances, that situation does not explain why Defendant's counsel failed to contact Louis Vuitton before the January 6, 2026 deadline, or seek an extension of that deadline from the Court. *See Stanziale v. First Nat. City Bank*, 74 F.R.D. 557, 560 (S.D.N.Y. 1977) ("Although the failure of the plaintiff to respond to Judge Haight's order could not be characterized as wil[l]ful, it was certainly not 'substantially justified.' Indeed, there was no attempt by plaintiff's attorney to inform the Court, prior to the deadline imposed, of his inability to meet the deadline set in the order."). And the Defendant may not assert that Louis Vuitton is asking for documents that do not exist and then later assert that the intensity of the search requires Louis Vuitton and the Court's leniency. Additionally, whether CGC acted in "good faith" does not bear on whether it had substantial justification to disobey the Court's Discovery Order. *See Jackson v. Nassau Cnty.*, 350 F.R.D. 227, 234 (E.D.N.Y. 2025) ("Substantial justification for refusing discovery is determined according to 'an objective standard of reasonableness and does not require that the party have acted in good faith.'" (internal citations omitted)).

An order requiring a party to reimburse an opposing party for the expenses resulting from noncompliance is the "mildest" sanction, *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979), and monetary sanctions for noncompliance "are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled," *Suarez v. Liquid Blue, Inc.*, 2024 WL 2058166, at

*2 (S.D.N.Y. May 7, 2024) (citation and quotation marks omitted); *accord Uttarwar v. Lazard Asset Mgmt. LLC*, 2024 WL 1500980, at *3 (S.D.N.Y. Mar. 22, 2024). Because CGC failed to comply with the discovery order by the January 6, 2026 deadline, and because no substantial justifications or unjust circumstances exist, Louis Vuitton is entitled to the reasonable expenses, including attorneys' fees and costs, "caused by the failure" to comply with the Discovery Order, Fed. R. Civ. P. 37(b)(2)(C), although the Court will exercise its discretion to limit any such reasonable expenses.

"Monetary sanctions under Rule 37(a) . . . are intended to deter discovery abuses ... [and] are designed to compensate the prevailing party for expenses it would not have incurred had the sanctioned party conducted itself properly." *Yorkville Advisors, LLC*, 2015 WL 855796, at *9 (citation and internal quotation marks omitted). Any such "reasonable expenses" should be limited to those related specifically to the filing of the motion for sanctions, but not any related subsequent discovery, except for any discovery still outstanding from this Court's December 23, 2025 Order, and to the retaking of the Cheslock deposition, which shall include only the time in the second deposition, and not the preparation time, since most, if not all, of any expenses related to preparation would have been incurred as part of this litigation in any event. *Cf. id.* at *19 ("Because defendants would have incurred a majority of the time charges and expenses at issue even if they had not addressed the [discovery matter] . . . the vast majority of the fees and expenses should be allocated to the portion of the motion which was granted.").

Accordingly, the motion for expenses under Rule 37(b)(2)(C) is **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, the motion for sanctions is **GRANTED** and the motion for fees is **GRANTED**.

28

To the extent that Louis Vuitton believes that the Defendant has not fully complied with the December 23, 2025 Discovery Order, Louis Vuitton shall submit a list of what discovery remains outstanding by **July 10, 2026**. Absent a credible claim of privilege, the Defendant must produce those outstanding discovery materials by **July 24, 2026**, or risk further sanctions.

In light of the Court's Order allowing for the retaking of Mr. Cheslock's deposition under Rule 30(b)(6), *see* Order, ECF No. 93, and the parties' proposed modified scheduling orders, *see* Proposed Orders, ECF Nos. 96 and 97, the Court modifies the scheduling order to extend the fact deposition until **August 14, 2026**, in order to accommodate only the taking of Mr. Cheslock's deposition and the Defendant's compliance with this Order.

With respect to the granted motion for fees, Louis Vuitton shall submit an application and memorandum detailing the amount of expenses it will seek under Rules 37(a)(5)(A) and 37(b)(2)(C) by **September 4, 2026**. The Defendant will then have until **September 25, 2026,** to respond, with any reply by Louis Vuitton due by **October 9, 2026**.

Any such motion for attorney's fees and costs shall be limited to the reasonable expenses related to the filing of the motion for sanctions, but not any related subsequent discovery, except for any discovery determined to be outstanding as of **July 10, 2026,** and not deemed to be subject to a credible claim of privilege, and any attorney fees and expenses related to the retaking of the Cheslock deposition, which shall only include the time in the deposition, and not any time related to the preparation for any such retaking of the deposition.

**SO ORDERED** at New Haven, Connecticut, this 26th day of June, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

29